1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11  LETICIA T.,[1]                   ) Case No. CV 19-4629-JPR
                                     )
12                    Plaintiff,     )
                                     ) MEMORANDUM DECISION AND ORDER
13            v.                     ) REVERSING COMMISSIONER
                                     )
14  ANDREW SAUL, Commissioner        )
    of Social Security,[2]           )
15                                   )
                      Defendant.     )
16  _____ )

17  **I.    PROCEEDINGS**

18        Plaintiff seeks review of the Commissioner's final decision

19  denying her applications for disability insurance benefits

20  ("DIB") and Social Security supplemental security income benefits

21  ("SSI").  The parties consented to the jurisdiction of the

22  undersigned under 28 U.S.C. § 636(c).  The matter is before the

23  Court on the parties' Joint Stipulation, filed March 10, 2020,

24  _____

25        [1] Plaintiff's name is partially redacted in line with
    Federal Rule of Civil Procedure 5.2(c)(2)(B) and the
26  recommendation of the Committee on Court Administration and Case
    Management of the Judicial Conference of the United States.
27
          [2] Andrew Saul is substituted in as the correct Defendant.
28  See Fed. R. Civ. P. 25(d).

                                    1

which the Court has taken under submission without oral argument.
For the reasons discussed below, the Commissioner's decision is
reversed and this matter is remanded for further proceedings.

**II.   BACKGROUND**

Plaintiff was born in 1968. (Administrative Record ("AR")
285.)  She attended school in Mexico through third grade. (AR
70.)[3]  She worked as an assembler for an electronics company, a
sewing-machine operator, a hand packager, and most recently a
housekeeper. (AR 322, 341.)  On March 9, 2015, she applied for
benefits, alleging that she had been unable to work since March
15, 2009, because of "swelling," "[n]umbness," "[p]ain,"
"[t]ingling," and "[w]eakness" of the feet; fatigue; "[p]ain,"
"[s]welling," "tingling," and "[a]rthritis" of the knees; pain of
the "[s]houlders and [c]ollar"; pain and "numbness" of the hips;
and "[m]ental[] depress[ion]" from weight gain caused by
"[p]hysical [i]nactivity." (AR 321; see AR 285.)  After her
applications were denied (AR 148-55, 159-64, 166-71), she
requested a hearing before an Administrative Law Judge (AR 173).
She appeared before the ALJ on July 20, 2017, but the hearing was
continued so that she could obtain counsel. (AR 46-64.)  A
hearing was held on January 2, 2018, at which Plaintiff,
represented by counsel, testified, as did a vocational expert.
(AR 65-87.)  In a written decision issued March 14, 2018, the ALJ
determined that Plaintiff was not disabled. (AR 27-38.)  On
March 22, 2019, the Appeals Council denied her request for

---

[3] Plaintiff's Disability Report states that she completed
eighth grade (AR 322), but she testified at a hearing that she
went through third grade in Mexico (AR 70).

2

1  review.  (AR 1-8.)  This action followed.

2  **III. STANDARD OF REVIEW**

3      Under 42 U.S.C. § 405(g), a district court may review the
4  Commissioner's decision to deny benefits.  The ALJ's findings and
5  decision should be upheld if they are free of legal error and
6  supported by substantial evidence based on the record as a whole.
7  See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v.
8  Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial evidence
9  means such evidence as a reasonable person might accept as
10  adequate to support a conclusion.  Richardson, 402 U.S. at 401;
11  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007).  It
12  is "more than a mere scintilla, but less than a preponderance."
13  Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec.
14  Admin., 466 F.3d 880, 882 (9th Cir. 2006)).  "[W]hatever the
15  meaning of 'substantial' in other contexts, the threshold for
16  such evidentiary sufficiency is not high."  Biestek v. Berryhill,
17  139 S. Ct. 1148, 1154 (2019).  To determine whether substantial
18  evidence supports a finding, the reviewing court "must review the
19  administrative record as a whole, weighing both the evidence that
20  supports and the evidence that detracts from the Commissioner's
21  conclusion."  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir.
22  1998).  "If the evidence can reasonably support either affirming
23  or reversing," the reviewing court "may not substitute its
24  judgment" for the Commissioner's.  Id. at 720-21.

25  **IV.  THE EVALUATION OF DISABILITY**

26      People are "disabled" for purposes of receiving Social
27  Security benefits if they are unable to engage in any substantial
28  gainful activity owing to a physical or mental impairment that is

3

1  expected to result in death or has lasted, or is expected to

2  last, for a continuous period of at least 12 months.  42 U.S.C.

3  § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir.

4  1992).

5          A.   <u>The Five-Step Evaluation Process</u>

6          An ALJ follows a five-step sequential evaluation process to

7  assess whether someone is disabled.  20 C.F.R. §§ 404.1520(a)(4),

8  416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir.

9  1995) (as amended Apr. 9, 1996).  In the first step, the

10 Commissioner must determine whether the claimant is currently

11 engaged in substantial gainful activity; if so, the claimant is

12 not disabled and the claim must be denied.  §§ 404.1520(a)(4)(i),

13 416.920(a)(4)(i).

14         If the claimant is not engaged in substantial gainful

15 activity, the second step requires the Commissioner to determine

16 whether the claimant has a "severe" impairment or combination of

17 impairments significantly limiting her ability to do basic work

18 activities; if not, a finding of not disabled is made and the

19 claim must be denied.  §§ 404.1520(a)(4)(ii) & (c),

20 416.920(a)(4)(ii) & (c).

21         If the claimant has a "severe" impairment or combination of

22 impairments, the third step requires the Commissioner to

23 determine whether the impairment or combination of impairments

24 meets or equals an impairment in the Listing of Impairments

25 ("Listing") set forth at 20 C.F.R., part 404, subpart P, appendix

26 1; if so, disability is conclusively presumed and benefits are

27 awarded.  §§ 404.1520(a)(4)(iii) & (d), 416.920(a)(4)(iii) & (d).

28

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[4] to perform her past work; if so, she is not disabled and the claim must be denied.  §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  Id.

If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy, the fifth and final step of the sequential analysis. §§ 404.1520(a)(4)(v), 404.1560(b), 416.920(a)(4)(v), 416.960(b).

B.   The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 15, 2009, the alleged onset date.  (AR 30.)  Her date last insured was December 31, 2015.  (Id.)  At step two, she determined that Plaintiff had severe impairments of "osteoarthritis of the joints," "degenerative disc disease of the lumbar spine," "degenerative disc disease of the cervical spine," and "obesity."  (Id.)  She

---

[4] RFC is what a claimant can do despite existing exertional and nonexertional limitations.  §§ 404.1545(a)(1), 416.945(a)(1); see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four.  Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

1  concluded that Plaintiff's plantar fasciitis was not severe
2  because it did "not cause a significant limitation in [her]
3  ability to perform basic work activities."  (Id.)

4      At step three, she found that Plaintiff's impairments did
5  not meet or equal any of the impairments in the Listing.  (AR
6  32.)  At step four, she determined that Plaintiff had the RFC to
7  perform medium work except that she could "frequently climb
8  ladders, ropes, and scaffolds, and balance and stoop,"
9  "occasionally climb ramps and stairs, and kneel, crouch, and
10  crawl," and "frequently perform bilateral overhead reaching."
11  (AR 33-34.)  The ALJ found Plaintiff capable of performing her
12  past relevant work as a hand packager and housekeeper.  (AR 37-
13  38.)  Accordingly, she found her not disabled.  (AR 38.)

14  **V.  DISCUSSION**[5]

15      Plaintiff alleges that the ALJ erred in determining her
16  severe impairments, evaluating the opinion evidence, and
17  assessing her symptom statements.  (See J. Stip. at 3-12, 16-28,
18  30-35, 38-39.)  Because the ALJ erred in the first and second
19  respects, the matter must be remanded for further analysis and
20  findings.

21

22      [5] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme
23  Court held that ALJs of the Securities and Exchange Commission
    are "Officers of the United States" and thus subject to the
24  Appointments Clause.  To the extent Lucia applies to Social
    Security ALJs, Plaintiff has forfeited the issue by failing to
25  raise it during her administrative proceedings.  (See AR 10, 46-
26  87, 158, 279-80); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir.
    1999) (as amended); see also Kabani & Co. v. SEC, 733 F. App'x
27  918, 919 (9th Cir. 2018) (rejecting Lucia challenge because
    plaintiff did not raise it during administrative proceedings),
28  cert. denied, 139 S. Ct. 2013 (2019).

A.   <u>The ALJ Erred in Assessing Plaintiff's Alleged Foot</u>
     <u>Impairment</u>

   1.   <u>Dr. Mooney</u>

        *a.   Applicable law*

"Acceptable medical sources" under the Social Security regulations include only licensed physicians, psychologists, optometrists, podiatrists, and speech pathologists. §§ 404.1513(a), 416.913(a).[6]  Chiropractors are treated as "other sources," <u>see</u> §§ 404.1513(d)(1), 416.913(d)(1); <u>see also</u> SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006), and an ALJ may reject opinions from an "other source" only by giving "reasons germane to each witness for doing so." <u>Popa v. Berryhill</u>, 872 F.3d 901, 906 (9th Cir. 2017) (as amended) (quoting <u>Molina v. Astrue</u>, 674 F.3d 1104, 1111 (9th Cir. 2012)).  If an ALJ errs by rejecting an opinion from an "other source" without providing a germane reason, that error is harmless if the Court can "conclude from the record that the ALJ would have reached the same result absent the error." <u>Molina</u>, 674 F.3d at 1115; <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015).

        *b.   Relevant background*

Plaintiff apparently suffered cumulative work-related impairment between May 2008 and March 2009, when she worked as a housekeeper at a hotel.  (AR 341-42, 568.)  Dr. Andrew Mooney, a chiropractor, evaluated and treated her as part of her worker's-

---

[6] For claims filed on or after March 27, 2017, the rules in §§ 404.1502 and 416.902 (not §§ 404.1513 and 416.913) apply. Plaintiff's claims were filed before March 27, 2017, however, and thus the new regulations do not apply.

7

compensation claim.  (AR 773-831.)  On July 7, 2016, Dr. Mooney completed a "Primary Treating Physician's Re-Evaluation Report and Request For Authorization."  (AR 773-800.)  He examined Plaintiff's shoulders, elbows, wrists, thoracic spine, lumbar spine, hips, knees, ankles, and feet.  (AR 774-79.)  He noted that she walked with a "slow, guarded gate [sic] pattern without a limp" and that she was "unable to heel-toe walk or perform a full squat due to a complaint of lumbar spine and bilateral foot pain."  (AR 776.)  The "Straight Leg Raise Supine" test,[7] "Standing Kemp's Test,"[8] and "Patrick-Fabere's Test"[9] were positive on both sides.  (Id.)  The ankle examination revealed a left hallux valgus[10] and palpable tenderness of the bilateral calcaneus and plantar fascia.  (AR 778.)  Dr. Mooney reviewed MRIs of her lumbar spine, cervical spine, and feet as well as a

---

[7] A straight-leg-raise test involves mechanical manipulation of the legs, stressing the neurological tissues in the spine; specific symptoms reported at different degrees of flexion can indicate nerve compression.  See The Pain Clinic Manual 44-45 (Stephen E. Abram & J. David Haddox eds., 2d ed. 2000).

[8] The Kemp test assesses the lumbar-spine facet joints to detect pain.  See Kemp test, Physiopedia, https:// www.physio-pedia.com/KEMP_test (last visited Aug. 25, 2020).

[9] The Patrick, or Fabere, test measures pain or dysfunction in the hip and sacroiliac joints.  Patrick Test, The Free Dictionary, http://medical-dictionary.thefreedictionary.com/ Patrick+test (last visited Aug. 25, 2020).

[10] Hallux valgus is a condition in which the big toe is bent toward the midline of the foot so that it overlaps the second toe.  See Medical Definition of Hallux Valgus, MedicineNet, https://www.medicinenet.com/script/main/art.asp?articlekey=6406 (last visited Aug. 25, 2020).  It may be accompanied by a bunion and is frequently associated with inflammation.  Id.  It can be related to inflammation of the nearby bursa or degenerative joint disease.  Id.

study of her upper limbs.  (AR 779.)  He also reviewed records
from the agreed medical examiners, a gasteroenterologist, and
Plaintiff's treating podiatrist, Dr. Victoria Foley.  (AR 780-
90.)  Based on his physical examination and review of her
diagnostic studies and records, Dr. Mooney found "[c]ervical
[s]pine [s]train/[s]prain with [m]yalgia" and "[d]isc
[d]isplacement"; "[l]eft [u]lnar [n]europathy"; bilateral carpal
tunnel syndrome; "[l]umbar [s]pine [s]train/[s]prain with
[m]yalgia," "[d]isc [d]isplacement," and "[r]adiculitis";
bilateral plantar fasciitis; "[r]ule [o]ut" "[c]alcaneal [s]pur"
on both feet; "[l]eft [h]allux [v]algus"; and "reported"
depression and anxiety, sleep disturbance, gastritis, and
"[s]exual [d]ysfunction."  (AR 790.)  He opined that she was
temporarily totally disabled ("TTD") from July 7 through August
21, 2016, and had not "reached [m]axim[um m]edical [i]mprovement"
("MMI").  (AR 792.)  He examined her again on August 11, 2016,
noting the same diagnoses as those in his July report.  (AR 821.)
He opined that she had not reached MMI and that she was TTD from
August 11 through September 25, 2016.  (AR 823.)

> c.   Analysis

     The ALJ summarized some of Plaintiff's treatment records and
the opinion of internist Dr. Seung Ha Lim, the consultative
examiner.  (AR 34-35.)  Dr. Lim opined that Plaintiff was
restricted to

> standing and/or walking about 6 hours in an eight-hour
> workday with appropriate breaks. [She can] sit for 6
> hours in an eight-hour day with appropriate breaks. [She
> can] lift and/or carry 50 pounds occasionally and 25

pounds frequently. Pushing, pulling, and overhead
reaching is unlimited other than as shown for lifting
and/or carrying. [She] has no other impairment related
physical limitations.

(AR 726.) The ALJ gave "great weight" to Dr. Lim's opinion,
finding that it was "consistent with the record as a whole." (AR
34.)

To reject Dr. Mooney's opinion, the ALJ had to give only a
germane reason; she failed to do so because she failed to address
the opinion at all. A chiropractor is not an acceptable medical
source. See §§ 404.1513(d)(1), 416.913(d)(1); see also SSR 06-
03p, 2006 WL 2329939, at *2. That is not a sufficient reason,
however, to reject his opinion. See Haagenson v. Colvin, 656 F.
App'x 800, 802 (9th Cir. 2016) (finding that ALJ failed to
provide germane reason for rejecting opinion of claimant's nurse
and counselor because "[t]he only reason that the ALJ offered for
rejecting their opinions is that they are not 'acceptable medical
sources' within the meaning of the federal regulation").

And although inconsistency with other objective evidence can
be a germane reason to reject other-source evidence, see Molina,
674 F.3d at 1111–12, and Dr. Lim's opinion was generally at odds
with Dr. Mooney's assessment, the ALJ did not cite that
inconsistency as a reason for ignoring or rejecting Dr. Mooney's
opinion. Indeed, the ALJ did not cite any specific
inconsistencies between the two doctors' opinions or between Dr.
Mooney's opinion and any other medical-opinion evidence. See
Nguyen v. Berryhill, No. 3:16-cv-01665-LB, 2017 WL 1196800, at
*15 (N.D. Cal. Mar. 31, 2017) (finding ALJ's reason for rejecting

10

other-source opinion "insufficient" because ALJ failed to "cite specific inconsistencies" with objective evidence); see also Bruce v. Astrue, 557 F.3d 1113, 1115 (9th Cir. 2009) (reasons for rejecting other-source testimony must be "germane" and "specific" (citation omitted)).

Moreover, the error was not harmless.  Dr. Mooney found that Plaintiff had a "slow, guarded gate [sic] pattern" and was "unable to heel-toe walk or perform a full squat." (AR 776, 807.)  He concluded that she was TTD for more than two months, until he stopped treating her.  (AR 792, 823.)  The ALJ specifically found that Plaintiff "consistently showed no restrictions in ambulation" and that "nothing in the record show[ed] that [her] plantar fasciitis . . . ha[d] any effect on her functioning" (AR 30), apparently ignoring Dr. Mooney's diagnoses (see AR 790, 821).  Further, Dr. Mooney's opinion was consistent with that of Dr. Foley, discussed more fully below.  The two jobs the ALJ found Plaintiff could perform, hand packager and housekeeper, are both medium exertional work,[11] which requires "standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).  Thus, the Court cannot "conclude from the record that the ALJ would have reached the same result absent the error."  Molina, 674 F.3d at 1115.

---

[11] Housekeeper is light work as generally performed, but the VE testified that it was medium work as Plaintiff performed it. (AR 84.)  Even when performed as light work, the DOT description of its duties demonstrates that it involves a good deal of walking or standing.  See Cleaner, Housekeeping, DOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016).

1    Because the ALJ failed to assign any particular weight to

2    Dr. Mooney's opinion or provide a germane reason for rejecting

3    it, remand is warranted.

4         2.   Dr. Foley

5              a.   Applicable law

6    In evaluating doctors' opinions, an ALJ must state what

7    weight she has given each opinion and explain why.  See SSR

8    96-2p, 1996 WL 374188, at *5 (July 2, 1996); §§ 404.1527(e),

9    416.927(e).[12]  An ALJ errs when she "does not explicitly reject a

10   medical opinion or set forth specific, legitimate reasons for

11   crediting one medical opinion over another."  Garrison v. Colvin,

12   759 F.3d 995, 1012 (9th Cir. 2014).

13             b.   Relevant background

14   Dr. Foley treated Plaintiff as part of her worker's-

15   compensation claim.  (AR 540-72.)  On February 9, 2011, she

16   examined Plaintiff and completed a "Primary Treating Physician's

17   Initial Report."  (AR 568-74.)  Plaintiff complained of "+9/10"

18   "stabbing" "right heel" pain when "walking or standing" and "left

19   foot" pain "in the bunion area."  (AR 568.)  Dr. Foley noted that

20   she "ambulated with [a] limp," but she was able to "gait[] onto

21   and off of the examination table without difficulty."  (AR 570.)

22   Her motor strength was "+5/5" "bilaterally to all muscles."

23   (Id.)  An ankle examination revealed "absolute tenderness with

24

25        [12] For claims filed on or after March 27, 2017, the rules in
26   §§ 404.1520c and 416.920c (not §§ 404.1527 and 416.927) apply.
     See §§ 404.1520c, 416.920c (evaluating opinion evidence for
27   claims filed on or after Mar. 27, 2017).  Plaintiff's claims were
     filed before March 27, 2017, however, and thus the new
28   regulations do not apply.

12

palpation, range of motion, dorsiflexion, plantar flexion,
eversion, and inversion." (<u>Id.</u>)  During a heel examination
Plaintiff exhibited "severe pain with palpation of the calcaneus
with lateral compression" and "pain with palpation of the
insertion of the plantar fascia plantarly to the plantar medial
turbercle of the calcaneus, right greater than left." (<u>Id.</u>)  Dr.
Foley noted that Plaintiff had an "abducted gait," a "short
stride and an antalgic gait." (AR 571.)  X-rays revealed a
"large plantar calcaneal spur on the right," a "small calcaneal
spur on the left," "a bunion deformity on the left first
metatarsophalangeal joint," and "decreased joint space on the
lateral aspect of the left first metatarsophalangeal joint."
(<u>Id.</u>)  She assessed "[c]alcaneal stress fracture on the right,"
"[p]lantar fasciitis bilaterally," and "[b]union on the left."
(AR 572.)  She recommended that Plaintiff get an MRI for the
plantar fasciitis and calcaneal stress fracture. (<u>Id.</u>)

On April 4, 2011, Dr. Foley noted that the MRI report showed
"moderately advanced" "reactive changes to the plantar fascia,"
"[e]dema in the plantar fat pad," "posterior tibialis
peritendinitis, chronic tendinopathy, . . . mild intrasubstance
partial tearing distally . . . without rupture," and "synovitis
and arthritis of the first metatarsophalangeal joint on the right
side." (AR 566.)  She assessed "[p]lantar fasciitis, right
side," "[p]ain," and "[d]ifficult walking." (AR 567.)  She
dispensed a "Cam walker"[13] and "told [Plaintiff] to wear [it] at

---

[13] A CAM walker is a removable, inflatable cast. <u>See</u>
<u>Medical Boot</u>, OrthoTape, http://orthotape.com/cam_walkers.asp
(continued...)

all times except when . . . taking a shower." (Id.)  On April 25, 2011, Dr. Foley recommended that Plaintiff "get a fiberglass cast, so that she [would] be totally immobilized," and "[d]iscussed possible surgical intervention." (AR 564.) Plaintiff stated during a September 26, 2011, visit that she "previously . . . had taken Vicodin[14] and . . . ha[d] been alternating between Vicodin and Motrin two to three times a week." (AR 561.)  Dr. Foley again discussed a "fiberglass cast" and "cortisone injections." (AR 562.)

On October 4, 2011, Dr. Foley gave Plaintiff a cortisone injection. (AR 560.)  Plaintiff reported on November 8, 2011, that she was a "little bit better after the injection." (AR 557.)  Dr. Foley gave her "a second cortisone injection." (AR 558.)  On December 12, 2011, the "injection [had] helped a little bit." (AR 555.)  Plaintiff was "wearing the Cam walker six hours daily" and was having "constant pain," but the "strong stabbing pain [was] less." (Id.)

Dr. Foley discussed with Plaintiff during a January 17, 2012 visit that she had "had the pain in the right foot for almost two years" and told her "that at this point [s]he would recommend foot surgery." (AR 554.)  Plaintiff told Dr. Foley on March 20, 2012, that "she stands and walks approximately four hours total daily for 30 to 40 minutes at a time." (AR 550.)  She rated her

---

[13] (...continued)
(last visited Aug. 25, 2020).

[14] Vicodin is an opioid pain reliever used to relieve moderate to severe pain.  See Vicodin, WebMD, https://www.webmd.com/drugs/2/drug-3459/vicodin-oral/details (last visited Aug. 25, 2020).

14

pain in the morning as "9/10" and "8/10" "after she warms up."
(Id.)  Plaintiff "refused surgery" and "the fiberglass cast."
(Id.)  Dr. Foley recommended that she get a pair of orthotics.
(AR 551.)  Further, she opined that Plaintiff had been TTD for
more than a year but could "return to work as of March 20, 2012."
(AR 552.)  Plaintiff saw Dr. Foley for orthotic casting on April
30, 2012.  (AR 546.)  She assessed "[p]lantar fasciitis,"
"[c]apsulitis," "[b]ursitis," and "[a]bnormal gait."  (Id.)  She
dispensed the orthotics on May 21, 2012.  (AR 544.)  Plaintiff
reported on June 4, 2012, that her orthotics were "very
comfortable but she d[id] not have any diminishing pain."  (AR
542.)  Dr. Foley again assessed an "[a]bnormal gait."  (Id.)  On
July 2, 2012, Plaintiff reported that her pain was still "7/10,"
and Dr. Foley gave her a cortisone injection "into the right
foot."  (AR 540.)  On July 31, 2012, she noted that Plaintiff had
refused "to have surgery," "was walk[ing] . . . without any
limp," "ha[d] reached her maximum medical benefit," and had "no
permanent impairment."  (AR 548-49.)

                    *c.   Analysis*

     The ALJ found that Plaintiff had "bilateral plantar
fasciitis" that was not severe.  (AR 30.)  But she apparently
based this finding at least in part on her inaccurate conclusions
that Plaintiff "consistently showed no restrictions in
ambulation" and "there is nothing in the record to show that the
claimant's plantar fasciitis . . . ha[d] any effect on her

                              15

functioning."[15]   (AR 30.)  She did not assign any particular
weight to Dr. Foley's opinions that Plaintiff had "difficult[y]
walking," had an "abnormal gait," and was TTD from February 9,
2011, to March 20, 2012; indeed, she never discussed or even
mentioned them.  By failing to even mention a treating doctor's
opinions, the ALJ erred.  <u>Garrison</u>, 759 F.3d at 1012; <u>see also</u>
<u>Marsh</u>, 792 F.3d at 1172-73 (finding error when ALJ gave no reason
for not mentioning treating doctor or his notes); <u>Jose Luis V.H.</u>
<u>v. Saul</u>, No. EDCV 18-2618-KS, 2020 WL 247315, at *4-5 (C.D. Cal.
Jan. 16, 2020) (finding reversible error when ALJ failed to
mention doctor's opinion or give opinion any weight).

     Moreover, the error was not harmless because the medium-work
jobs identified by the ALJ that Plaintiff could perform require
standing or walking, off and on, for a total of approximately six
hours in an eight-hour workday.  <u>See</u> SSR 83-10, 1983 WL 31251, at
*6.  Defendant argues that the error was harmless because Dr.
Foley's opinions were all rendered before the period during which
Plaintiff would have been eligible to actually receive benefits.
(<u>See</u> J. Stip. at 14.)  But in light of Dr. Mooney's (and Dr.
Halperin's; see below) later similar statements, which the ALJ
also ignored, Dr. Foley's opinions could have led to a reasonable
inference that Plaintiff was afflicted with severe plantar

---

[15] The ALJ also incorrectly stated that Plaintiff "was never
prescribed narcotic or other medications ordinarily used for
severe pain and discomfort" and that "there is no evidence of
[Plaintiff] receiving physical therapy [or] pain relief
injections." (AR 36.)  Plaintiff was prescribed narcotics,
including Vicodin, Norco, and Tramadol.  (<u>See, e.g.</u>, AR 561, 641,
679.)  Further, she underwent physical therapy and received
cortisone injections.  (<u>See, e.g.</u>, AR 558, 560, 600.)

1  fasciitis throughout the relevant period.  Therefore, the Court
2  cannot conclude from the current record that the ALJ would have
3  reached the same result absent the error.

   3.  <u>Dr. Halperin</u>

   a.  *Relevant background*

6  Podiatrist Gabriel Halperin treated Plaintiff as part of her
7  worker's-compensation claim.  (AR 579-600.)  On October 28, 2013,
8  he examined her and completed a "Comprehensive Initial Podiatric
9  Consultation" report.  (AR 579-91.)  He noted that she "walk[ed]
10 without [a] limp" (AR 585), but she exhibited "pain on palpation
11 over the rim of the heel with tingling neuritic pain" and had a
12 "positive Tinel's sign[16] at the common peroneal, deep peroneal,
13 posterior tibial and medial calcaneal nerves" (AR 587-88).  He
14 diagnosed plantar fasciitis, "[c]alcaneal enthesopathy,"[17]
15 "[c]hronic pain," "[p]eripheral nerve impairment," and
16 "[n]euritis with heel pain of the sural nerve, posterior tibial
17 nerve[,] and the lateral plantar nerve."  (AR 588.)  He
18 recommended orthotics, "four steroid injections," a "[h]eel lift
19 to reduce traction to the calcaneus," a "[n]ight splint," and
20 pain medication.  (AR 589.)

---

22  [16] Tinel's sign is positive when tapping the affected nerve
produces tingling.  <u>See</u> <u>Tinel's Sign</u>, Healthline,
23  https://www.healthline.com/health/tinels-sign#test (last visited
Aug. 25, 2020).

25  [17] Enthesopathy is inflammation of the site of attachment or
insertion of ligaments, tendons, fascia, or articular capsule
26  into bone and may be caused by chronic traction of the Achilles
tendon on the calcaneus.  <u>See</u> <u>Achilles and plantar fascia</u>
27  <u>enthesopathy</u>, Radiopaedia, https://radiopaedia.org/cases/
achilles-and-plantar-fascia-enthesopathy?lang=us (last visited
28  Aug. 25, 2020).

1   Dr. Halperin stated in a March 3, 2014 progress report that

2   Plaintiff's "[p]ain ha[d] increased," "[l]eft foot . . . greater

3   than right," and that she was "complaining of knee pain." (AR

4   593.) She reported to him on April 14, 2014, that she had "not

5   improved significantly." (AR 595.) He noted that he would delay

6   "steroid injections until May." (Id.) On May 14, 2014,

7   Plaintiff reported "improved pain with trigger injection[s]

8   initially." (AR 596.) Dr. Halperin again noted "[p]ain on

9   palpation" of Plaintiff's feet on May 28, July 9, and August 13,

10  2014. (AR 597-99.) After "[two] sessions [of physical therapy,

11  Plaintiff] noted decreased pain." (AR 600.)

12                          b.  *Analysis*

13  Dr. Halperin diagnosed Plaintiff with plantar fasciitis and

14  several other conditions. Other than noting Plaintiff's own

15  subjective statements of symptoms, however, he did not document

16  or provide any opinion regarding any functional limitations. But

17  given that some of the ALJ's statements concerning the record

18  clearly failed to take into account any of the treatment notes or

19  opinions from the doctors who treated Plaintiff's feet (see supra

20  sec. V.A.1.c & .2.c), her error in failing to discuss Dr.

21  Halperin was not harmless. See Marsh, 792 F.3d at 1173 (ALJ's

22  failure to discuss treating doctor's opinion was not harmless

23  when ALJ did not mention doctor's statement that condition

24  rendered plaintiff "pretty much nonfunctional").

25          B.   Clinica de Salud Familiar

26  Plaintiff also argues that the ALJ "failed to provide proper

27  discussion and consideration" of her treatment with Clinica de

28  Salud Familiar. (J. Stip. at 23; see id. at 22.) The ALJ

                                  18

discussed these records.  (See AR 35.)

As the ALJ noted, although the records documented Plaintiff's subjective complaints and treatment for shoulder and knee pain (AR 733-71, 841-57), they did not show any diagnostic test results or opinions suggesting that she had limitations greater than those in the RFC.  (AR 35.)  In any event, the ALJ can reconsider them on remand in light of the complete record.

C.   Remaining Issues

Plaintiff asserts that the ALJ erred in evaluating her testimony and statements regarding her symptoms.  (J. Stip. at 32-35, 38-39.)  The ALJ should reevaluate Plaintiff's symptom testimony and statements once she has properly considered the treating doctors' opinions, so the Court does not address those arguments.  See Negrette v. Astrue, No. EDCV 08-0737 RNB., 2009 WL 2208088, at *2 (C.D. Cal. July 21, 2009) (finding it unnecessary to address further disputed issues when court found that ALJ failed to properly consider treating doctor's opinion and lay-witness testimony).

**VI.   CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Decision.

DATED:  August 26, 2020

_____
JEAN ROSENBLUTH
U.S. Magistrate Judge

19